No. 22-2649

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

SONDRA DENNISON,

     Plaintiff/Appellant,

v.

INDIANA UNIVERSITY OF PENNSYLVANIA, ET AL.,

     Defendants/Appellees.

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 2:20-cv-1563

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

JULIE L. GANTZ
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

# Table of Contents

Table of Authorities .............................................................................. ii

Statement of Interest ............................................................................1

Statement of the Issue...........................................................................1

Statement of the Case ...........................................................................2

   A.  Statement of the Facts ...................................................................2

   B.  District Court Decision................................................................3

Argument .............................................................................................6

All Discriminatory Job Transfers Implicate the "Terms" and "Conditions" of Employment Under the ADEA...................................................6

   A.  Because an employee's job position is a fundamental "term" or "condition" of employment, all discriminatory job transfers fall within the scope of 29 U.S.C. § 623(a)(1). ..................................................6

   B.  29 U.S.C. § 623(a)(1) does not require plaintiffs to make an additional, atextual showing of "material" or "tangible" harm.............................11

   C.  Because 29 U.S.C. § 623(a)(1) reaches all discriminatory transfers, the district court erred in requiring a showing that the transfer was to an inferior job................................................................................19

Conclusion..........................................................................................22

Certificate of Compliance ...................................................................24

Certificate of Service ..........................................................................26

# Table of Authorities

## Cases

*Barber v. CSX Distrib. Servs.*, 68 F.3d 694 (3d Cir. 1995) ....................................7

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) .............................................6, 15

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)................................. 16-18

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) .........................15

*Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022)....................9, 13

*Durham Life Ins. Co. v. Evans*, 166 F.3d 139 (3d Cir. 1999).....................4, 16, 18

*Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) ........................................................6

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ...................................................12

*Heckler v. Mathews*, 465 U.S. 728 (1984) .............................................................15

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) .............................20

*Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403 (3d Cir. 1999)..........................21

*Jones v. Se. Penn. Transit Auth.*, 796 F.3d 323 (3d Cir. 2015).............................20

*Keene Corp. v. United States*, 508 U.S. 200 (1993).................................................14

*Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289 (3d Cir. 2019)...........4, 20

*Langley v. Merck & Co., Inc.*, 186 F. App'x 258 (3d Cir. 2006) ............... 5, 19-20

*Lorillard v. Pons*, 434 U.S. 575 (1978) ...............................................................6, 12

*Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825 (3d Cir. 1981).......................10

*McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323 (E.D. Pa. 1997)....................21

*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995) ...........................16

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) ..............................6, 11, 12

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ..........................12

*Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70 (D.C. Cir. 2017) ..................................................................................................................10

*Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994)......................................................12

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)........................................7

*Threat v. City of Cleveland*, 6 F.4th 672 (6th Cir. 2021)...................................8, 22

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) ..............................12

*Torre v. Casio*, 42 F.3d 825 (3d Cir. 1994) ...........................................................20

*Vera v. Penn. Higher Educ. Assistance Agency*, No. 1:09-cv-341, 2013 WL 1178232 (M.D. Pa. Feb. 26, 2013))...........................................................................5

## Statutes, Rules, and Regulations

Age Discrimination in Employment Act of 1967

29 U.S.C. §§ 621 *et seq.*...................................................................................1

29 U.S.C. § 623(a)(1) ............................................................................*passim*

29 U.S.C. § 628......................................................................................10

Title VII, 42 U.S.C. §§ 2000e *et seq.*

     42 U.S.C. § 2000e-2(a).........................................5, 6, 9, 10, 15, 17

29 C.F.R. § 1625.2 .................................................................................10

72 Fed. Reg. 36873, 36875 (July 6, 2007) ...........................................10

Fed. R. App. P. 29(a)(2).........................................................................1

## Other Authorities

EEOC Compliance Manual § 15-VII(B)(1), 2006 WL 4673430 (2006) ..............8

U.S. Br. for Resp't in Opp'n at 13, *Forgus v. Shanahan*, 141 S. Ct. 234 (2020) (No. 18-942) ..............................................................................9

3d Cir. I.O.P. 5.7...................................................................................19

## Statement of Interest

The Equal Employment Opportunity Commission (EEOC) is the primary agency charged by Congress with administering and enforcing federal laws prohibiting workplace discrimination, including the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* This appeal raises the important question of whether a discriminatory lateral transfer is actionable under the ADEA. Because the EEOC has a strong interest in eradicating all forms of unlawful workplace discrimination, it offers its views to the Court. *See* Fed. R. App. P. 29(a)(2).

## Statement of the Issue

Whether a forced job transfer, allegedly made on the basis of the employee's age, may constitute discrimination "with respect to … terms, conditions, or privileges of employment" under the ADEA, even where there is no change in benefits or salary, and the new position is not inferior to the prior position.[1]

---

[1] The EEOC takes no position on any other issue presented in this case.

**Statement of the Case**

**A.   Statement of the Facts[2]**

Plaintiff Sondra Dennison worked at Indiana University of

Pennsylvania from January 2007 until she was terminated in March 2020.

Appx.6.[3]  She had several different titles and areas of responsibility during

her tenure. In July 2017, the University appointed her as Executive

Director, Housing, Residential Living and Dining; in this position, she

reported to the Vice President of Student Affairs. Appx.6-7, 15. In October

2019, Dennison's supervisor reorganized the Student Affairs division and

changed Dennison's position to Director of Residence Life. Appx.6. A staff

member whom Dennison had previously supervised became Director of

Housing and Dining and no longer reported to Dennison—instead, she

reported directly to Dennison's supervisor, the Vice President of Student

Affairs. *Id.* As a result, Dennison no longer had oversight over housing and

dining. Appx.6-7. The University fired Dennison in March 2020, ostensibly

for unilaterally implementing a contactless express check-out process for

---

[2] This recitation of the facts is taken from the district court's decision.

[3] Cites to the Joint Appendix are abbreviated as "Appx.__."

students leaving campus at the onset of the COVID-19 pandemic. Appx.10-11.

Dennison sued the University, alleging violations of the First and Fourteenth Amendments and several federal anti-discrimination statutes, including the ADEA and Title VII, 42 U.S.C. §§ 2000e *et seq.*[4] Appx.5. As relevant here, Dennison alleged that her October 2019 job transfer, which she characterized as a demotion, unlawfully discriminated against her based on her age in violation of the ADEA. Appx.29. The University moved for summary judgment, arguing in part that Dennison was not demoted and therefore could not establish a prima facie case of discrimination under 29 U.S.C. § 623(a)(1). Appx.30.

## B.   District Court Decision

The district court granted the University's motion for summary judgment. Appx.5, 30. In relevant part, with respect to the October 2019 job transfer, the district court did not conduct a separate analysis under the

---

[4] While Dennison also appeals from the district court's grant of summary judgment on her Title VII claim, as to the October 2019 job transfer, she now argues only that it violated the ADEA. *See* Opening Br. at 41-48.

ADEA; instead, it simply incorporated by reference its analysis of the same issue under Title VII. Appx.30 ("As discussed earlier, the evidence does not support that Dr. Dennison suffered an adverse employment action through her October 2019 demotion.").

In discussing Dennison's failure to establish a prima facie case under either Title VII or the ADEA, the court said initially that a plaintiff must establish an "adverse employment action," which this Court defines as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Appx.22 (quoting *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019)). Relying on a hostile-work-environment case, the court explained that "a tangible adverse employment action may be found" where "an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions." *Id.* (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999)). The court recognized that "an adverse employment action may include something less than discharge, such as a demotion or job transfer,

4

even without a loss of pay or benefits." *Id.* (quoting *Vera v. Penn. Higher Educ. Assistance Agency*, No. 1:09-cv-341, 2013 WL 1178232, at *7 (M.D. Pa. Feb. 26, 2013)). Nonetheless, it relied upon an unpublished decision of this Court for the proposition that "minor actions, such as lateral transfers and changes of title, are generally insufficient to constitute an adverse employment action," and the reassignment position must be "'inferior to, rather than merely different from,' the prior position" to violate Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). *Id.* (quoting *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 260 (3d Cir. 2006)).

The district court then held that Dennison offered insufficient evidence that she suffered an adverse employment action. Appx.23. The court acknowledged that the University changed Dennison's title and that "she lost some responsibility." *Id.* But, in the court's view, Dennison failed to show "how her change in job title or shift of responsibilities worsened her job position." *Id.* The court pointed out that Dennison's salary remained the same and her new title was at the same level in the University hierarchy. *Id.* at 19. Thus, the district court concluded,

5

Dennison's job transfer, including "[t]he reduction in supervisory responsibilities," did not "rise to the level of [an] adverse employment action." *Id.*

## Argument

### All Discriminatory Job Transfers Implicate the "Terms" and "Conditions" of Employment Under the ADEA.

**A.   Because an employee's job position is a fundamental "term" or "condition" of employment, all discriminatory job transfers fall within the scope of 29 U.S.C. § 623(a)(1).**

In interpreting the ADEA, as always, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Servs.*, 557 U.S. 167, 175-76 (2009) (; *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (rejecting atextual limitations to Title VII); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) ("After all, only the words on the page constitute the law adopted by Congress and approved by the President.") (Title VII).[5]

---

[5] Title VII and the ADEA contain the same "terms, conditions, or privileges" language; thus, the analysis is the same under both statutes. *See* 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1); *Lorillard v. Pons*, 434 U.S. 575,

In keeping with the ADEA's purpose of "prohibit[ing] arbitrary age discrimination in employment," 29 U.S.C. § 621(b), an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his … terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress did not define the phrase "terms, conditions, or privileges of employment" in the ADEA. "When a term goes undefined in a statute," courts "give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

This case involves the formal transfer of Dennison from one position to another, which altered her job title, as well as her work and supervisory responsibilities. Appx.6-7. Under the ordinary meaning of the controlling

---

584 (1978) (observing that the substantive provisions of the ADEA "were derived *in haec verba* from Title VII"). Thus, as this Court has noted, "[b]ecause the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to the prohibition against discrimination contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under the ADEA." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995).

statutory language, such changes plainly implicate the "terms" and "conditions" of employment. 29 U.S.C. § 623(a)(1).

Just as a "shift schedule is a term of employment," *Threat v. City of Cleveland*, 6 F.4th 672, 677 (6th Cir. 2021) (Title VII), so too is the position that the employee holds and the work for which she is responsible. The "when," "where," and "what" of a job—including the position that the employee holds and the particular work they are required to do—fall squarely within the "terms" and "conditions" of employment. *See id.* ("If the words of [the statute] are our compass, it is straightforward to say that a shift schedule … counts as a term of employment. … How could the *when* of employment not be a *term* of employment?"). A typical employee asked to describe her "terms" or "conditions … of employment," 29 U.S.C. § 623(a)(1), would almost surely mention what her role is and what work she does. *See also* EEOC Compliance Manual § 15-VII(B)(1), 2006 WL 4673430 (2006) ("Work assignments are part-and-parcel of employees' everyday terms and conditions of employment.").

8

In *Chambers v. District of Columbia*, the en banc Court of Appeals for the D.C. Circuit addressed under Title VII the same question presented in this appeal under the ADEA: whether 42 U.S.C. § 2000e-2(a)(1) prohibits *all* discriminatory job transfers or only those resulting in "objectively tangible harm," regardless of how discriminatory the motivation may have been. 35 F.4th 870, 872 (D.C. Cir. 2022) (en banc) (citation omitted). The D.C. Circuit overturned its prior precedent to hold that "the straightforward meaning of the statute … emphatic[ally]" prohibits all discriminatory transfers, even those that do not result in changes in benefits, salary, or worsened working conditions. *Id.* at 874.

The *Chambers* en banc court explained that "the transfer of an employee to a new role, unit, or location … undoubtedly" affects that employee's terms, conditions, or privileges of employment. *Id.* It stressed that "it is difficult to imagine a more fundamental term or condition of employment than the position itself." *Id.* (quoting U.S. Br. for Resp't in Opp'n at 13, *Forgus v. Shanahan*, 141 S. Ct. 234 (2020) (No. 18-942)). *Chambers* agreed with what then-Judge Kavanaugh had previously

9

explained:  under the plain language of 42 U.S.C. § 2000e-2(a)(1),

transferring or denying an employee's transfer, on the basis of a protected

characteristic, "plainly constitutes discrimination with respect to

'compensation, terms, conditions, or privileges of employment' in violation

of Title VII." *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70, 81

(D.C. Cir. 2017) (Kavanaugh, J., concurring) (citation omitted).

This interpretation of the statutory phrase "terms, conditions,

[and/or] privileges of employment" applies equally to the ADEA. It is also

consistent with the EEOC's regulations implementing the ADEA, which

explain that the statute bars "discriminat[ion] against an individual *in any*

*aspect of employment* because that individual is 40 years old or older," unless

a statutory exception applies. 29 C.F.R. § 1625.2 (emphasis added).

Congress granted the EEOC the authority to issue those regulations, *see* 29

U.S.C. § 628, and the agency promulgated them following a notice-and-

comment process, *see* 72 Fed. Reg. 36873, 36875 (July 6, 2007). As this Court

has recognized, the EEOC's regulations implementing the ADEA are

entitled to substantial deference. *See Levine v. Fairleigh Dickinson Univ.*, 646

F.2d 825, 831 (3d Cir. 1981) (noting that deference to the EEOC's

regulations implementing the ADEA is appropriate "unless the interpretive

regulation can be said not to be a reasoned and supportable interpretation

of the statute").

In this case, it is undisputed that Dennison's position changed in

October 2019. She had a different title, different supervisory

responsibilities, and different job responsibilities as "housing and dining

were no longer part of [her] oversight." Appx.7 (citation omitted; alteration

in original). The "terms" and "conditions" of Dennison's job changed as a

result of her transfer. That is all she needed to show in order to satisfy 29

U.S.C. § 623(a)(1)'s "terms, conditions, or privileges of employment"

element. The district court erred in holding otherwise.

**B.   29 U.S.C. § 623(a)(1) does not require plaintiffs to make an additional, atextual showing of "material" or "tangible" harm.**

Read according to its plain meaning, the key statutory phrase in 29

U.S.C. § 623(a)(1)—"terms, conditions, or privileges of employment"—"is

an expansive concept" with a broad sweep. *Meritor*, 477 U.S. at 66 (citation

omitted). The phrase "evinces a congressional intent to strike at the entire

spectrum of disparate treatment … in employment." *Spain v. Gallegos*, 26 F.3d 439, 446 (3d Cir. 1994) (Title VII) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) (pointing to 29 U.S.C. § 623(a) and observing that "[t]he ADEA 'broadly prohibits arbitrary discrimination in the workplace based on age'" (quoting *Lorillard v. Pons*, 434 U.S. 575, 577 (1978))). Accordingly, "the language of [the statute] is not limited to 'economic' or 'tangible' discrimination." *Meritor*, 477 U.S. at 64; *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (Title VII) (confirming that the statutory phrase "terms, conditions, or privileges" is not limited to "the narrow contractual sense" (citation omitted)).

The district court applied an incorrect standard when it concluded that Dennison failed to establish that she suffered an "adverse employment action" under 29 U.S.C. § 623(a)(1). Appx.30. The court reasoned that Dennison's reassignment to "Director of Residence Life" did not "worsen[] her job position," pointing out that "[h]er salary did not decrease and her new title remained at the same level within the University hierarchy."

Appx.22-23; *see also* Appx.22 (describing the required showing as "a tangible adverse employment action"). But 29 U.S.C. § 623(a)(1) does not require that an employee alleging discrimination in the "terms" or "conditions" of employment make a separate showing of material or tangible harm. Indeed, requiring proof of harm beyond a discriminatory reassignment is unsupported by the ADEA's text, structure, and purpose. As Judges Ginsburg and Tatel recently explained for the D.C. Circuit sitting en banc, construing Title VII, "[o]nce it has been established that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic, the analysis is complete." *Chambers*, 35 F.4th at 874-75.

If Congress had intended that 29 U.S.C. § 623(a)(1) reach only discriminatory conduct that results in a certain level or type of harm, it could have said so. Indeed, the very next subsection of the ADEA makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of

employment opportunities or *otherwise adversely affect his status as an employee*, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphasis added). The absence of similar qualifying language in 29 U.S.C. § 623(a)(1) is thus notable. "[W]here Congress includes particular language in one section of a statute but omits it in another … , it is generally presumed that Congress acts intentionally and purposely. . . ." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (cleaned up).

Moreover, the rule the district court applied allows for untenable results. Under the district court's standard, an employer would be free to engage in brazen acts of discrimination—openly transferring employees on the basis of age, for example—so long as there is no further showing of worsened working conditions, promotion prospects, or other "tangible" or "material" harm. But that result is contrary to the ADEA's statutory language and core purposes. Under the plain text of 29 U.S.C. § 623(a)(1), no amount of age discrimination that affects the terms, conditions, or privileges of employment is lawful (absent an affirmative defense not at issue in this appeal).

14

Instead, 29 U.S.C. § 623(a)(1)—like 42 U.S.C. § 2000e-2(a)(1)—works to "prevent injury to individuals based on who they are." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (Title VII). Thus, in addition to proving that the challenged employment action affects the plaintiff's "terms, conditions, or privileges" of employment, Section 623(a)(1) requires proof that the employer "discriminate[d] … *because of*" age. 29 U.S.C. § 623(a)(1) (emphasis added). The Supreme Court has explained that "discriminate against" under Title VII means "distinctions or differences in treatment *that injure* protected individuals." *Bostock*, 140 S. Ct. at 1753 (citation omitted) (emphasis added).

The same rationale applies to the ADEA. An employee who can show discriminatory treatment in her terms, conditions, or privileges of employment on the basis of age has necessarily been subjected to meaningful harm under 29 U.S.C. § 623(a)(1). *Cf. Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) (recognizing the "serious non-economic injuries" suffered by those who are "personally denied equal treatment solely because of their membership in a disfavored group"). And prohibiting

discrimination relating to the terms, conditions, or privileges of employment furthers Congress's broad purpose to eliminate job-based age discrimination. This is because "[t]he ADEA, enacted in 1967 as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995).

In the decision below, the district court went astray based in part on a misapplication of the Supreme Court's tangible-employment-action standard in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), for determining when an employer is liable for a hostile work environment. The district court quoted *Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999), for the proposition that "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." Appx.22 (citation omitted). But *Durham*

did not address the substantive standard for a Title VII discrimination claim—instead, it was applying *Ellerth*'s tangible-employment-action standard to determine whether an employer could be held vicariously liable for supervisory sexual harassment.

*Ellerth* likewise involved a claim against an employer alleging that a supervisor had created a hostile work environment through sexual harassment of an employee. 524 U.S. at 752. The question in *Ellerth* did not involve the substantive standard for 42 U.S.C. § 2000e-2(a)(1) discrimination claims, but instead asked under what circumstances "an employer has vicarious liability" for sexual harassment by a supervisor. *Id.* at 754.

After reviewing agency-law principles, the Supreme Court determined that vicarious liability exists, with no affirmative defense, "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.* at 765. The Court reasoned that such a "tangible employment action" by a supervisor necessarily "requires an official act of the enterprise," and

17

therefore supports automatic imputation of vicarious liability on the employer. *Id.* at 761-62. *Ellerth* also held that an employer is liable for a hostile work environment created by a supervisor even in the *absence* of any tangible employment action, unless the employer can establish the "affirmative defense" outlined in the decision. *Id.* at 764-65.

*Ellerth*'s "tangible employment action" path for automatically imputing vicarious liability to an employer in cases involving supervisory harassment says nothing about the meaning or scope of the phrase "terms, conditions, or privileges of employment" in either Title VII or the ADEA. To the contrary, *Ellerth* makes clear that a tangible employment action is *not* a necessary ingredient of a discrimination claim under either statute. That is because *Ellerth* held that an employer is liable for a hostile work environment created by a supervisor even in the *absence* of any tangible employment action, where the employer cannot establish that it is entitled to an "affirmative defense." 524 U.S. at 764-65. In sum, neither *Durham* nor *Ellerth* supports the heightened proof of harm standard that the district

court applied to satisfy the "terms, conditions, or privileges of employment" element of a Title VII or ADEA claim.

**C.  Because 29 U.S.C. § 623(a)(1) reaches all discriminatory transfers, the district court erred in requiring a showing that the transfer was to an inferior job.**

In granting summary judgment to the University as to Dennison's discrimination claim regarding her October 2019 job transfer, the district court cited an unpublished, non-precedential decision, *see* 3d Cir. I.O.P. 5.7, stating that "lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions" because the transfer must result in a position that "is inferior to, rather than merely different from" the prior position. Appx.22 (quoting *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 260-61 (3d Cir. 2006)). *Langley* purports to add a requirement that a new position be objectively "inferior," as determined by a court, for a discriminatory transfer to that position to be actionable. 186 F. App'x at 261. But this heightened requirement appears nowhere in the language of the ADEA and is absent from the EEOC's implementing regulations. 29 U.S.C. § 623(a)(1)'s plain text reaches all job

transfers, not only transfers to inferior positions. *Cf. Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 338 n.18 (1977) ("Of course, Title VII provides for equal opportunity to compete for any job, whether it is thought better or worse than another.").

Moreover, *Langley*'s holding is not required under this Court's precedent. In *Jones v. Southeastern Pennsylvania Transit Authority*, 796 F.3d 323, 326 (3d Cir. 2015), for example, this Court explained that 29 U.S.C. § 623(a)(1) requires "an action by an employer that is serious and tangible *enough* to alter an employee's compensation, terms, conditions, or privileges of employment." 796 F.3d at 326 (emphasis added and citation omitted); *see also Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (describing the same standard in dicta in retaliation case). This principle that an employee need only show an alteration of her terms, conditions, or privileges of employment is equally true under the ADEA. For example, in *Torre v. Casio*, 42 F.3d 825 (3d Cir. 1994), the plaintiff alleged that the defendant had transferred him to a dead-end job because of his age. In reversing the trial court's grant of summary judgment, this

Court held that a job transfer even without loss of pay or benefits may

constitute an adverse job action, *id.* at 831 n.7, and determined that the

plaintiff had established a genuine issue of material fact as to whether his

transfer constituted an adverse employment action. *Id.*; *see also*

*McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323, 326 (E.D. Pa. 1997)

(discussing *Torre*).

Likewise, in *Jones v. School District of Philadelphia*, 198 F.3d 403, 412 (3d

Cir. 1999)—another decision the district court cited here—this Court held

that "administrative transfers" of a teacher from one school to another, and

the denial of the opportunity to teach his preferred class roster were both

"adverse employment actions" sufficient to sustain a Title VII claim. While

*Jones* mentioned that the new school to which the teacher was transferred

"had a reputation of being a 'difficult school,'" the court did not

categorically require a showing that the job was in some way inferior, only

that the transfer and the teaching assignments were—from the plaintiff's

perspective—not preferred. *Jones*, 198 F.3d at 412.

In deciding this case, this Court should decline to read its precedent as requiring anything other than what the statute's text itself provides. *See Threat*, 6 F.4th at 677. As Chief Judge Sutton explained in *Threat*, any references to "adverse employment actions" and "materiality" in the case law should be understood only as "shorthand for the operative words in the statute," requiring proof of discrimination in the plaintiff's terms, conditions, or privileges of employment that is sufficient to cause "an Article III injury." *Id.* at 678-79. Accordingly, this Court should join the D.C. and Sixth Circuits in clarifying its precedent interpreting "terms, conditions, or privileges of employment" and hold that all discriminatory lateral transfers fall within the scope of 29 U.S.C. § 623(a)(1).

### Conclusion

For the foregoing reasons, the judgment of the district court should be vacated and the case remanded for further proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN

22

Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

s/*Julie L. Gantz*
JULIE L. GANTZ
Attorney
District of Columbia Bar No. 460607
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

## Certificate of Compliance

Pursuant to 3d Cir. L.A.R. 28.3(d) & 46.1(e), I certify that, as an attorney representing an agency of the United States, I am not required to be admitted to the bar of this Court. *See* 3d Cir. L.A.R. 28.3, comm. cmt. I also certify that all other attorneys whose names appear on this brief likewise represent an agency of the United States and are also not required to be admitted to the bar of this Court. *See id.*

I certify that this brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains 3,981 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 3d Cir. L.A.R. 29.1(b). This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it was prepared using Microsoft Word for Office 365 ProPlus in 14-point Palatino Linotype, a proportionally spaced typeface.

Pursuant to 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronically filed version of this brief is identical to the text of the hard copies of the brief that will be filed with the Court. I further certify

pursuant to 3d Cir. L.A.R. 31.1(c) that, prior to electronic filing with this

Court, I performed a virus check on the electronic version of this brief

using Microsoft Defender Antivirus, version 1.381.2673.0, and that no virus

was detected.

s/*Julie L. Gantz*
Julie L. Gantz
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2547
julie.gantz@eeoc.gov

Dated: January 25, 2023

**Certificate of Service**

On January 25, 2023, I filed the foregoing brief with the Clerk of the

Court by using the CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

*s/Julie L. Gantz*
Julie L. Gantz
Attorney
